**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 19, 2006

JOSIP RADELJAK, Individually, as Personal
Representative of the Estate of ENA BEGOVIC,
Deceased, and as Next Friend of LANA
RADELJAK; LEO RADELJAK; and TEREZA
BEGOVIC,

      Plaintiffs-Appellees,

v                                                 No. 127679

DAIMLERCHRYSLER CORP,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

We granted leave to appeal to consider whether the Wayne Circuit Court abused its discretion in dismissing this case on the basis of the doctrine of forum non conveniens, where plaintiffs are residents and citizens of a foreign country and the lawsuit alleges product liability arising from a motor vehicle accident that occurred outside the United States. The Court of Appeals held that the circuit court abused its discretion in dismissing the case because Wayne County is not a "seriously inconvenient" forum. Because we conclude that the circuit court did

not abuse its discretion in dismissing the case, we reverse the judgment of the Court of Appeals and reinstate the circuit court's order dismissing the case.

## I. Facts

Plaintiffs, who are residents and citizens of Croatia, were involved in a motor vehicle accident in Croatia. It is alleged that the Jeep Grand Cherokee in which they were seated somehow shifted from park into reverse and went off the roadway and into a ravine. One of the passengers died and the driver and other passengers were injured. The vehicle was designed and manufactured in Michigan. The vehicle was purchased in Italy and maintained and serviced in Italy and Croatia. Plaintiffs argue that the transmission, designed and manufactured in Japan, spontaneously slipped. Plaintiffs filed their lawsuit in the Wayne Circuit Court.

Defendant moved for summary disposition on the basis of forum non conveniens. The circuit court granted the motion. Plaintiffs appealed and the Court of Appeals reversed.[1] We granted defendant's application for leave to appeal and asked the parties to address:

> (1) whether the public interest factors of the forum non conveniens doctrine set forth in *Cray v Gen Motors Corp*, 389 Mich 382, 396 [207 NW2d 393] (1973), should be revised or modified; and (2) whether, even if another more appropriate forum exists, a Michigan court may not resist jurisdiction unless its own forum is

---

[1] Unpublished opinion per curiam, issued December 14, 2004 (Docket No. 247781).

"seriously inconvenient." See *Robey v Ford Motor Co*, 155 Mich App 643, 645 (1986).[2]

## II. Standard of Review

This Court reviews a trial court's decision to grant or deny a motion to dismiss a case on the basis of the doctrine of forum non conveniens for an abuse of discretion. *Cray, supra* at 397. An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes. *Herald Co v Eastern Michigan Univ Bd of Regents,* __ Mich __; __ NW2d __ (Docket No. 128263 decided July 19, 2006); *Novi v Robert Adell Children's Funded Trust,* 473 Mich 242, 254; 701 NW2d 144 (2005).

## III. Analysis

*"Forum non conveniens"* is defined as the "discretionary power of court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum." Black's Law Dictionary (6th ed). The doctrine is not derived from statutes; rather, it is a common-law doctrine created by courts.[3] The United States Supreme Court

---

[2] 472 Mich 924 (2005).

[3] Const 1963, art 3, § 7 provides:

> The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.

As noted in *Placek v Sterling Hts*, 405 Mich 638, 656-657, 275 NW2d 511 (1979), this Court may change the common law through its decisions.

adopted the forum non conveniens doctrine in 1947. *Gulf Oil Corp v Gilbert*, 330 US 501, 508-509; 67 S Ct 839; 91 L Ed 1055 (1947).[4] This Court first recognized this doctrine in 1973 in *Cray*. In *Cray, supra* at 395, we held that a court may refuse to hear a case on the basis of the doctrine of forum non conveniens even though it otherwise may have jurisdiction. "The principle of *forum non conveniens* establishes the right of a court to resist imposition upon its jurisdiction although such jurisdiction could properly be invoked." *Id.* The application of forum non conveniens "lie[s] within the discretion of the trial judge." *Id.* A plaintiff's selection of a forum is ordinarily accorded deference. *Anderson v Great Lakes Dredge & Dock Co*, 411 Mich 619, 628-629; 309 NW2d 539 (1981). Although "a court can and must consider the residence of the parties in deciding whether to decline jurisdiction[,] . . . a party's Michigan residence does not automatically render the doctrine of *forum non conveniens* inapplicable." *Russell v Chrysler Corp*, 443 Mich 617, 624; 505 NW2d 263 (1993).[5] "'[T]he ultimate inquiry is where trial will best serve the convenience of the parties [and the ends] of justice.'" *Cray, supra* at 391, quoting *Koster v (American) Lumbermens Mut*

---

[4] Superseded by statute on other grounds, as explained in *American Dredging Co v Miller*, 510 US 443, 449 n 2; 114 S Ct 981; 127 L Ed 2d 285 (1994).

[5] "[The place] of corporate domicile . . . might be entitled to little consideration under the doctrine of *forum non conveniens*, which resists formalization and looks to the realities that make for doing justice." *Koster v (American) Lumbermens Mut Cas Co*, 330 US 518, 528; 67 S Ct 828; 91 L Ed 1067 (1947).

4

*Cas Co*, 330 US 518, 527; 67 S Ct 828; 91 L Ed 1067 (1947).  In *Cray* we held that the following factors should be considered in deciding a motion to dismiss on the basis of forum non conveniens:

1. The private interest of the litigant.

    a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;

    b. Ease of access to sources of proof;

    c. Distance from the situs of the accident or incident which gave rise to the litigation;

    d. Enforcibility [sic] of any judgment obtained;

    e. Possible harassment of either party;

    f. Other practical problems which contribute to the ease, expense and expedition of the trial;

    g. Possibility of viewing the premises.

2. Matters of public interest.

    a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

    b. Consideration of the state law which must govern the case;

    c. People who are concerned by the proceeding.

3. Reasonable promptness in raising the plea of *forum non conveniens*.  [*Cray, supra* at 396.]

In the instant case, the trial court dismissed on the basis of forum non conveniens.  The trial court determined that Croatia was a more convenient forum because this case involves a vehicular accident in Croatia in which Croatian

5

citizens and residents were injured, where Croatian law will likely have to be applied, and the alleged cause of the accident was a transmission manufactured and designed in Japan. This conclusion does not fall outside "the principled range of outcomes," *Novi, supra* at 254, and was therefore not an abuse of discretion.

A review of the *Cray* factors reveals why the trial court's decision to dismiss was within "the principled range of outcomes." *Id.* We begin by noting that the requirement of reasonable promptness in bringing a plea of forum non conveniens has indisputably been satisfied in this case, because defendant moved for dismissal based on the doctrine of forum non conveniens in a timely manner. With that procedural predicate addressed, we now turn to the private and public interest factors that are in considerable dispute.

The first factor concerns the "private interest of the litigant." *Cray, supra* at 396. Subfactor 1(a) pertains to the "[a]vailability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses." *Id.* It is undisputed that Michigan courts lack powers of compulsory process over witnesses in Croatia.[6] If trial were held in Michigan, defendant would be forced to use "letters rogatory" in order to obtain testimony from any foreign witnesses who

---

[6] As the United States Supreme Court has explained, "[T]o fix the place of trial at a point where litigants cannot compel personal attendance [of witnesses] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp, supra* at 511.

6

could not voluntarily travel to Michigan for trial.[7] The use of letters rogatory is acknowledged to be a very time consuming and cumbersome process.[8] However, this subfactor cuts the other way as well because it is also undisputed that Croatian courts lack powers of compulsory process over witnesses in Michigan.

Further, even if all the witnesses are willing to travel in order to testify, the cost of obtaining the attendance of these witnesses will be high regardless of whether this case is tried in Croatia or in Michigan; obviously, if this case is tried in Croatia, all the Michigan witnesses will have to travel to Croatia to testify and if this case is tried in Michigan, all the Croatian witnesses will have to travel to Michigan to testify. Therefore, subfactor 1(a) does not clearly favor one forum over the other where the difficulties implicit in the travel arrangements would be identical.

Subfactor 1(b) concerns the "[e]ase of access to sources of proof." *Cray, supra* at 396. The trial court concluded that, because the accident occurred in Croatia, a Croatian court will have easier access to sources of proof and it will be easier for defendant to obtain documents relating to the accident in Croatia.

---

[7] See the United States Department of State website at <http://travel.state.gov/law/info/judicial/judicial_695.html> (accessed April 26, 2006).

[8] *Illusorio v Illusorio-Bildner*, 103 F Supp 2d 672, 677 (SD NY, 2000); United States Department of State website at <http://travel.state.gov/law/info/judicial/judicial683.html> (accessed April 26, 2006).

Although all the documentary evidence pertaining to the choice of transmission for the vehicle is in Michigan, it would be easier for plaintiffs to obtain these Michigan documents if the trial were held in Croatia than it would be for defendant to obtain the Croatian documents if trial were held in Michigan because MCR 2.305 authorizes subpoenas for document production in connection with an action pending in another country and we are aware of no similar Croatian provision, nor have plaintiffs cited any. Therefore, subfactor 1(b) favors the Croatian forum over the Michigan forum.

Subfactor 1(c) concerns the "[d]istance from the situs of the accident or incident which gave rise to the litigation." *Cray, supra* at 396. Michigan is a great distance from the situs of the accident, i.e., Croatia. However, plaintiffs argue that this is not controlling because the specific incident that gave rise to this litigation was defendant's choice of transmission, which occurred in Michigan. This subfactor does not favor one forum over the other.

Subfactor 1(d) concerns the "[e]nforcibility of any judgment obtained." *Cray, supra* at 396. It is uncontested that a judgment in this case would be enforceable whether rendered by a Michigan court or a Croatian court. Therefore, subfactor 1(d) does not favor one forum over the other.

Subfactor 1(e) concerns the "[p]ossible harassment of either party." *Id.* Neither party has argued harassment. Therefore, subfactor 1(e) does not favor one forum over the other.[9]

Subfactor 1(f) concerns "[o]ther practical problems which contribute to the ease, expense and expedition of the trial." *Id.* If this case is tried in Michigan, defendant will not be able to implead Croatian persons or entities that may be responsible for plaintiffs' injuries. As the United States Supreme Court has held, "the problems posed by the inability to implead potential third-party defendants" is "sufficient to support dismissal on grounds of *forum non conveniens.*" *Piper Aircraft Co v Reyno*, 454 US 235, 259; 102 S Ct 252; 70 L Ed 2d 419 (1981). Therefore, subfactor 1(f) favors the Croatian forum over the Michigan forum.

---

[9] Justice Kelly argues in her dissent that the harassment factor favors Michigan as a forum. We disagree. Indeed, even after the Court of Appeals concluded that this factor favored Michigan as a forum, plaintiffs state as follows in their brief: "There is no cause for accusation of 'harassment of either party' herein." (Plaintiff's brief, p 15). Thus, with reference to this factor, Justice Kelly is advancing an argument the plaintiffs do not even make.

Justice Kelly maintains, on the basis of statements by foreign witnesses that they are willing to travel to Michigan to testify, that defendants would have less trouble bringing reluctant Croatian witnesses to testify in Michigan than plaintiffs would have in bringing reluctant defense witnesses to Croatia. This belief, however, is merely speculative and without force. In weighing this factor, a trial court could not rely on the purported intention of foreign witnesses because, as Justice Kelly concedes, a trial court in Michigan cannot compel foreign witnesses to appear. Therefore, Justice Kelly is incorrect that this subfactor favors Wayne County as the proper forum.

Subfactor 1(g) concerns the "[p]ossibility of viewing the premises." *Cray, supra* at 396. If this case is tried in Michigan, it will not be possible for the trier of fact to view the scene of the accident because the accident occurred in Croatia. Therefore, subfactor 1(g) favors the Croatian forum over the Michigan forum.

In sum, three of the "private interest" subfactors favor the Croatian forum over the Michigan forum, and four of these subfactors do not favor one forum over the other. None of the "private interest" subfactors favors the Michigan forum over the Croatian forum. Therefore, "[t]he private interest[s] of the litigant," *Cray, supra* at 396, favor the Croatian forum over the Michigan forum.

The second broad *Cray* factor pertains to "[m]atters of public interest." *Id.* Subfactor 2(a) concerns "[a]dministrative difficulties which may arise in an area which may not be present in the area of origin." *Id.* As the United States Supreme Court has explained, "[a]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." *Gilbert, supra* at 508. If every automotive design defect case against Michigan-based automobile manufacturers must be heard in Wayne County if a foreign plaintiff so desires, there will certainly be increased congestion in an already congested local court system. It can hardly be argued that Croatia would face increased court congestion. Unlike Michigan, Croatia is not a recognized center for automotive design, engineering, and manufacturing, or to our knowledge, a center for litigation concerning automotive design defects. Therefore, subfactor 2(a) generally favors the Croatian forum over the Michigan forum.

10

Subfactor 2(b) concerns "[c]onsideration of the state law which must govern the case." *Cray, supra* at 396. If this case is tried in Wayne County, the Wayne Circuit Court will most likely have to apply Croatian law. In order to determine whose laws apply, courts look to see which jurisdiction has a greater interest in the case. *Sutherland v Kennington Truck Service, Ltd*, 454 Mich 274, 286; 562 NW2d 466 (1997). Croatia appears to have a greater interest in this case than does Michigan because it involves residents and citizens of Croatia who were injured in an accident in Croatia. Therefore, Croatian law would most likely apply in this case. See *Farrell v Ford Motor Co*, 199 Mich App 81; 501 NW2d 567 (1993) (holding that North Carolina law applies in a defective automobile action involving a North Carolina resident, a North Carolina accident, and a vehicle purchased in North Carolina). As the United States Supreme Court has explained, "[t]here is an appropriateness . . . in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert, supra* at 509. Accordingly, "the need to apply foreign law favors dismissal." *Piper, supra* at 260 n 29. Therefore, subfactor 2(b) favors the Croatian forum over the Michigan forum.

Subfactor 2(c) concerns "[p]eople who are concerned by the proceeding." *Cray, supra* at 396. The people of Croatia obviously are concerned by this proceeding given that several Croatian citizens and residents were injured and one was killed in an accident that occurred in that country. As the United States

Supreme Court has explained, "[t]here is a local interest in having localized controversies decided at home." *Gilbert, supra* at 509. The "localized controversy" involved in this case concerns whether defendant is liable for injuries suffered by Croatian citizens and residents in Croatia. Croatia obviously has a considerable "local interest" in determining the redress available to its citizens and residents who are injured in Croatia. That is, Croatia has a "local interest" in having this "localized controversy" decided by its own rules and procedures. On the other hand, there is no denying that Michigan citizens have an interest in product liability lawsuits filed against Michigan manufacturers. On the whole, however, for the reasons we discussed concerning subfactor 2(b), we conclude that Croatia's interest is greater than Michigan's interest. Therefore, subfactor 2(c) favors a Croatian forum.

In sum, the three *Cray* "public interest" subfactors favor the Croatian forum over the Michigan forum. None of them favors a Michigan forum. Thus, the "[m]atters of public interest," *Cray, supra* at 396, favor the Croation forum over the Michigan forum. Therefore, an analysis of both the "private interest" and "public interest" factors of *Cray* demonstrates that the trial court's decision that Croatia is the most appropriate forum for this case was within the principled range of outcomes.

In *Cray,* this Court held that the factors listed in its 1973 opinion were not the only factors that could ever be considered. *Id.* at 395. As we explained, "'[w]isely it has not been attempted to catalogue the circumstances which will

12

justify or require either grant or denial of remedy'"; rather, "'[t]he doctrine leaves much to the discretion of the court to which the plaintiff resorts . . . .'" *Cray, supra* at 395, quoting *Gilbert, supra* at 508. In response to our invitation to brief whether the *Cray* public interest factors should be revised or modified, defendant argues that we should explicitly follow the United States Supreme Court's lead from *Piper, supra* at 257, in stating that a foreign plaintiff's choice of forum in entitled to "less deference" than would apply to a domestic plaintiff.

In *Piper* the United States Supreme Court expressed its concern regarding allowing foreign plaintiffs to sue American businesses and manufacturers in America on the basis that American law is more favorable to plaintiffs as a class than is foreign law. *Piper, supra* at 252. The Court explained, "American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive [if dismissal was barred whenever the law in the alternative forum were less favorable to the plaintiff].[10] The flow of litigation into the United

---

[10] The United States Supreme Court explained that the following factors make the United States "extremely attractive to foreign plaintiffs":

> First, all but 6 of the 50 American States—Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming— offer strict liability. 1 CCH Prod. Liability Rep. § 4016 (1981). Rules roughly equivalent to American strict liability are effective in France, Belgium, and Luxembourg. West Germany and Japan have a strict liability statute for pharmaceuticals. However, strict liability remains primarily an American innovation. Second, the tort plaintiff may choose, at least potentially, from among 50 jurisdictions if he decides to file suit in the United States. Each of these jurisdictions

(continued…)

13

States would increase and further congest already crowded courts." *Id.* As the United States Supreme Court has held, "dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to . . . take advantage of favorable law." *Piper, supra* at 249 n 15.

In *Piper, supra* at 256, the United States Supreme Court held that in contrast to the presumption in favor of a domestic plaintiff's forum choice, "a foreign plaintiff's choice [of forum] deserves less deference." *Id*. at 256. This makes sense because, as the United States Supreme Court explained, when a plaintiff chooses to bring a lawsuit in another country thousands of miles away from home and where the underlying accident occurred, there is no basis to presume that this faraway forum will be more convenient to the parties and to the court, and, thus, there is no basis to defer to the plaintiff's choice in forum. *Id.* Thus, we modify our statement in *Anderson, supra,* that a plaintiff's selection of a

---

(…continued)
applies its own set of malleable choice-of-law rules. Third, jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions. G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969). Even in the United Kingdom, most civil actions are not tried before a jury. 1 G. Keeton, The United Kingdom: The Development of its Laws and Constitutions 309 (1955). Fourth, unlike most foreign jurisdictions, American courts allow contingent attorney's fees, and do not tax losing parties with their opponents' attorney's fees. R. Schlesinger, Comparative Law: Cases, Text, Materials 275-277 (3d ed. 1970); Orban, Product Liability: A Comparative Legal Restatement—Foreign National Law and the EEC Directive, 8 Ga. J. Int'l & Comp. L. 342, 393 (1978). Fifth, discovery is more extensive in American than in foreign courts. Schlesinger, *supra*, at 307, 310, and n. 33. [*Piper, supra* at 252 n 18.]

14

forum is ordinarily accorded deference to indicate that a foreign plaintiff's choice of forum is entitled to less deference than that accorded to a domestic plaintiff's choice of forum.

In the instant case, plaintiffs are residents and citizens of Croatia who were injured in an accident in Croatia and plaintiffs have chosen to file their lawsuit in Michigan. Given that plaintiffs live in Croatia and that the underlying accident occurred in Croatia, there is no basis to presume that plaintiffs chose to file this lawsuit in Michigan out of convenience. Further, while there is no direct evidence that the primary reason why plaintiffs chose to file this lawsuit in Michigan was to take advantage of Michigan's favorable laws and to avoid Croatia's less favorable laws, no other reasonable explanation has been presented. It is important to consider the foreign jurisdiction's interest in the case and the effect that a Michigan court's resolution of the case will have in that jurisdiction. In this case, a Michigan court is being asked to apply Croatian law to Croatian plaintiffs in a lawsuit pertaining to an accident that occurred in Croatia. Certainly, a Croatian court would be better equipped at handling a matter of this sort than a Michigan court. We find it appropriate, in light of the continuing globalization of our economy, to follow *Piper* and indicate that a foreign plaintiff's choice of venue is entitled to less deference than a domestic plaintiff's choice of venue.

Although a majority of the *Cray* private and public interest factors supports the trial court's decision that Croatia is the more appropriate forum to hear this case, the Court of Appeals held that the trial court abused its discretion in so

concluding. More specifically, the Court of Appeals held that the trial court abused its discretion in dismissing this action on the basis of the forum non conveniens doctrine because Michigan is not a "seriously inconvenient" forum, relying upon *Robey v Ford Motor Co*, 155 Mich App 643, 645; 400 NW2d 610 (1986).

In *Robey, supra* at 645, the Court of Appeals held that "the court . . . may not decline jurisdiction unless its own forum is seriously inconvenient." The Court of Appeals in the instant case relied heavily on *Robey's* "seriously inconvenient" requirement, stating:

> [T]he trial court did not make a finding that Wayne County was a seriously inconvenient forum. Even if another more appropriate forum exists, the court still may not resist jurisdiction unless its own forum is seriously inconvenient. . . . Without a determination that Wayne County is a seriously inconvenient forum, the trial court could not resist jurisdiction. It therefore abused its discretion in granting the dismissal. [Slip op at 2-3.]

The "seriously inconvenient" language appears traceable to the Restatement Conflict of Laws, 2d, which was cited in footnote 2 of the *Cray* decision. 389 Mich 394 n 2. While this language from the Restatement was cited in a footnote of *Cray*, this "seriously inconvenient" language was not part of the test adopted in *Cray* and in subsequent forum non conveniens decisions from this Court we did not cite or utilize a "seriously inconvenient" test. See, e.g., *Anderson v Great Lakes Dredge & Dock Co*, *supra,* and *Russell v Chrysler Corp*, *supra*. Indeed, imposing a "seriously inconvenient" requirement is inconsistent with this Court's

16

holding, in *Cray, supra* at 396, that it is "within the discretion of the trial judge to decline jurisdiction in such cases as the convenience of the parties and the ends of justice dictate." Therefore, we reject the "seriously inconvenient" standard and overrule *Robey, supra,* to the extent that it held that a court cannot decline jurisdiction unless the exercise of such jurisdiction would be "seriously inconvenient."

Because there is no requirement that a trial court can only dismiss a case on the basis of the forum non conveniens doctrine if the forum is "seriously inconvenient," the Court of Appeals erred in concluding that the trial court abused its discretion in dismissing this case on the basis of the forum non conveniens doctrine without concluding that the forum is "seriously inconvenient."

Finally, we note the similarities this case has with *Piper, supra*. In *Piper*, the plaintiffs were residents of Scotland who were involved in an airplane crash in Scotland. The plaintiffs sued a company that manufactured the airplane in Pennsylvania and a company that manufactured the airplane's propellers in Ohio. The suit was brought in the United States District Court for the Central District of California, but was transferred to the United States District Court for the Central District of Pennsylvania.[11] The federal district court dismissed the suit on the basis of the forum non conveniens doctrine and the United States Court of Appeals

---

[11] The action, which was originally filed in California, was transferred to Pennsylvania because one of the defendants was not subject to personal jurisdiction in California, but was subject to personal jurisdiction in Pennsylvania.

for the Third Circuit reversed. The United States Supreme Court reversed, concluding that the district court did not abuse its discretion in concluding that Scotland was the appropriate forum. Just as the district court in *Piper, supra,* did not abuse its discretion in dismissing the action involving Scottish residents and a Scottish accident on the basis of the forum non conveniens doctrine, the trial court in this case did not abuse its discretion in dismissing this action involving Croatian residents and a Croatian accident on the basis of the forum non conveniens doctrine. "The burden on our courts and upon the defendant's ability to prepare a defense greatly outweighs the remote interest the plaintiff has shown in behalf of conducting this trial in Michigan." *Anderson, supra* at 631.

## IV. Response to the Dissent

The dissent pays lip service to the abuse of discretion standard, but does not apply it. There are ten subfactors to be considered in evaluating a motion to dismiss on the basis of forum non conveniens. According to the dissent, five of the seven private factors are a draw, i.e., do not favor one forum over the other, and one favors Croatia as a forum and one favors Michigan. (But, as noted in footnote 8, the one that Justice Kelly says favors Michigan is a conclusion that even plaintiffs do not claim.) With reference to the public interest factors, the dissent finds that two are a draw and one favors Michigan. Given that a foreign plaintiff's choice of forum deserves less deference, even using Justice Kelly's analysis of the *Cray* factors, one would be hard-pressed to conclude that a trial

18

court's conclusion, whichever way it would have gone, was not within the principled range of outcomes.

Justice Kelly asserts that the trial court abused its discretion, citing language from *Gulf Oil Corp*, *supra,* to the effect that unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed.  330 US 508.[12]  But, "'the ultimate inquiry is where trial will best serve the convenience of the parties and the end of justice.'"  *Cray, supra* at 391 (citation omitted).  The trial court's conclusion that a Croatian forum will best serve the convenience of the parties and the end of justice was not an abuse of discretion.

## V. Conclusion

Because we conclude that the Wayne Circuit Court did not abuse its discretion in dismissing this case on the basis of the forum non conveniens doctrine, we reverse the judgment of the Court of Appeals and reinstate the circuit court's order dismissing the case.  We also take this opportunity to hold that a trial

---

[12] As previously explained, the United States Supreme Court no longer follows this rule with reference to foreign plaintiffs because it is inconsistent with *Piper Aircraft*.  Justice Kelly , however, does not agree with, nor would she follow *Piper Aircraft.*  Unlike Justice Kelly, we find the animating reasons undergirding *Piper Aircraft* persuasive and certainly not xenophobic.

19

court should afford a foreign plaintiff's choice of forum less deference than it would accord a domestic plaintiff.

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOSIP RADELJAK, Individually, as Personal
Representative of the Estate of ENA BEGOVIC,
Deceased, and as Next Friend of LANA
RADELJAK; LEO RADELJAK; and TEREZA
BEGOVIC,

     Plaintiffs-Appellees,

v                                     No. 127679

DAIMLERCHRYSLER CORP,

     Defendant-Appellant.

_____

MARKMAN, J. (*concurring*).

I concur with the majority's analysis and with its conclusion that the trial court did not abuse its discretion in dismissing this case on the basis of the doctrine of forum non conveniens. I write separately to identify additional "public interest" factors that I believe have become increasingly important for courts to consider in light of contemporary economic and legal realities in determining whether a case should be dismissed on the basis of the doctrine of forum non conveniens.[1]

---

[1] These contemporary realities include the growth of multinational corporations, the expanding realm of international free trade, and the increasing attractiveness of American courts to plaintiffs. Because an increasing number of

(continued…)

The first of these additional factors is the extent to which it is appropriate

for the state of Michigan to enable a foreign plaintiff to avail himself of the more

favorable substantive law and procedural rules afforded by Michigan courts in

(…continued)
American companies are doing business, and an increasing number of American products are being sold and used, throughout the world, an increasing number of foreign citizens are being injured by, and bringing lawsuits against, these companies. Such globalization is also reflected in the evolving nature of the legal profession and the growing presence of American law firms throughout the world. As one commentator has explained:

> This century has seen the development of the large-scale multinational corporation ("MNC"), an entity whose transactions can span several continents and establish contacts with many nations. The growth of these businesses, along with procedural innovations in jurisdiction, has created an environment easily exploited by forum shopping plaintiffs seeking to recover large awards against MNCs. Generous in personam jurisdiction provisions often permit plaintiffs to sue defendant MNCs in several different state or federal courts, thereby providing plaintiffs with a broad choice of fora. This flexibility in choice of forum, coupled with significant pro-plaintiff elements in U.S. courts, has made the United States a particularly attractive forum for plaintiffs seeking to recover against MNCs.

> As forum shopping in the United States has become more feasible and desirable, technological advances in transportation and an increase in transnational activity have increased the potential number of international suits that plaintiffs can bring in the United States. The result has been a dramatic increase in the number of international or foreign disputes brought in the United States against MNCs. American courts have responded, through certain procedural reforms and refinements, to the increase in forum shopping involving foreign plaintiffs. The most notable of these is an expansion of the old doctrine of forum non conveniens. [Comment, *The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs*, 19 U Pa J Int'l Econ L 141, 141-142 (1998).]

comparison with those of the plaintiff's own jurisdiction.  As one commentary has explained:

> American courts have become, in the words of the Supreme Court, "extremely attractive"[2] to foreign plaintiffs because of the availability of jury trials, liberal discovery rules,[3] malleable choice-of-law rules, contingency fees[4] and potentially large compensatory and punitive damage awards.[5]  [Dunham & Gladbach, *Forum non conveniens and foreign plaintiffs in the 1990s*, 24 Brook J Int'l L 665, 666 (1999) (internal citation omitted).][6]

---

[2] As Lord Denning, former Master of the Rolls (the senior civil judge in the Court of Appeal of England and Wales), has said:

> As a moth is drawn to the light, so is a litigant drawn to the United States.  If he can only get his case into their courts, he stands to win a fortune.  At no cost to himself, and at no risk of having to pay anything to the other side.  [*Smith Kline & French Laboratories Ltd v Block,* 2 All ER 72, 74 (1983).]

[3] "Sometimes, a plaintiff engaged in litigation in a civil-law country will go so far as to institute a second action here, without intending to bring the case to trial in our courts, but merely for the purpose of obtaining the advantage of American-style discovery."  Schlesinger, Comparative Law: Cases--Text--Materials, p 400 (4th ed, 1980).

[4] "[F]or the indigent foreign plaintiff whose access to local courts is impeded by prohibitive filing fees and the absence of any viable legal aid program, representation on a contingency fee basis constitutes a genuine advantage, sufficient in itself to direct the plaintiff toward the courts of the United States." Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, 199 (1985).

[5] "Outside the United States and Canada, recovery of punitive damages in wrongful death cases is uncommon, if not unknown."  Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, 203 (1985).

[6] These commentators noted:

> In the 1990s, foreign plaintiffs have commenced product liability actions in the United States with increasing frequency.
>
> (continued…)

Citizens of the United Kingdom have filed suit in New York against American and British tampon manufacturers alleging that design defects in the product caused toxic shock syndrome and resulted in the death of a family member. Nurseries located in Jamaica and Costa Rica have brought strict products liability claims in Florida against the American manufacturers and sellers of a pesticide that allegedly had damaged or destroyed their crops. An Irish citizen brought suit in New York against several U.S. manufacturers claiming that he contracted HIV [human immunodeficiency virus] due to contaminated blood clotting products caused by defective manufacturing and processing. Numerous women from Australia, Canada, and England brought actions in Alabama alleging, inter alia, strict products liability against American corporate defendants for design and manufacturing defects related to breast implants. [*Id.* at 665.]

Another commentator, writing about the litigation involving Union Carbide and the Bhopal, India, gas leak disaster, has written:

The United States continues to attract the international forum-shopping plaintiff. The trend is readily discernible in the field of personal injury. If the plaintiff can name an American defendant over whom jurisdiction can be constitutionally asserted in the United States, litigation in the American forum almost inevitably ensues. Examples abound: Victims of air crashes in Scotland, Taiwan, India, and Saudi Arabia elect to vindicate their rights in the federal courthouses of the United States. *E.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.), *cert. denied*, 104 S. Ct. 549 (1983); *In re Disaster at Riyadh Airport, Saudi Arabia*, 540 F. Supp. 1141 (D.D.C. 1982); *In re Air Crash Disaster Near Bombay, India*, 531 F. Supp. 1175 (W.D. Wash. 1982). The daughters of British citizens who ingested drugs made, marketed, and sold by the British subsidiary of an American pharmaceutical company sued the latter in the Southern District of Ohio. *In re Richardson-Merrell, Inc.*, 545 F. Supp. 1130 (S.D. Ohio 1982), *aff'd sub nom. Dowing v. Richardson-Merrell, Inc.*, 727 F.2d 608 (6th Cir. 1984). The representatives of a Nigerian citizen injured off the coast of Nigeria while working on a drilling rig operated by the Nigerian subsidiary of a Delaware-owned Bahamian corporation filed suit in the Eastern District of Louisiana. *Chiazor v.*

(continued…)

And, as another commentary has explained:

>Certain procedural features of the U.S. courts encourage plaintiffs in international disputes to bring their cases in the United States. First, the Seventh and Fourteenth Amendments give plaintiffs the right to trial by jury in most civil suits. Jury trials present several advantages to individual plaintiffs in civil suits against large businesses. American jurors have very different backgrounds and economic sympathies compared to those of the professional judges and career bureaucrats who decide disputes in most foreign courts. Consequently, these juries are more likely to award judgment to individual plaintiffs suing large [multinational corporations]. U.S. juries also award more generous damages than do foreign tribunals, particularly in instances of plaintiffs alleging injury by a corporate entity.[7] For example, in the infamous

(…continued)
*Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir.), *cert. denied*, 455 U.S. 1019 (1981).

>What these and similar cases have in common is the presence of foreign plaintiffs, presumably unfamiliar with the laws of this country, injured abroad by the allegedly tortious conduct of American defendants, choosing to forego their own nations' court systems in favor of ours. Bhopal is merely the latest example of this phenomenon. [Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, n 14 (1985).]

[7] As one commentator has observed:

>[T]he United States has no equal with regard to the size of a possible recovery. One British judge observed that "in the United States the scale of damages for injuries of the magnitude sustained by the plaintiff is something in the region of ten times what is regarded as appropriate by . . . the courts of [England]." A comparative legal scholar writing more than ten years ago made a rather detailed comparison of the maximum awards of damages reported by countries throughout the northern hemisphere and concluded, "[T]he USA . . . is in a class of its own." The difference becomes even more dramatic if one compares the United States with a Third World country. [Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, 203-204 (1985) (internal citations omitted).]

litigation stemming from an industrial accident in Bhopal, India, the estimated value of the suit in India was no more than $75 million. In contrast, experts estimated that an American jury would award compensatory damages of $235 million, with an even greater amount for punitive damages. [Comment, *The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs*, 19 U Pa J Int'l Econ L 141, 146-147 (1998).][8]

The United States Supreme Court has expressed its concern regarding foreign plaintiffs being allowed to sue American businesses and manufacturers in America on the basis that American law is more favorable to plaintiffs as a class than is foreign law. *Piper, supra* at 252. The Court has explained, "American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive [if dismissal was barred whenever the law in the alternative forum were less favorable to the plaintiff].[9] The flow of litigation into the United

---

[8] This commentator noted additional reasons why the United States constitutes an attractive forum: (1) "contingency fees make litigation more accessible to indigent plaintiffs and provide risk averse plaintiffs with a form of insurance"; (2) "[t]he so-called 'American system' in which the losing party does not have to pay the expenses of the winner also reduces plaintiffs' risks in litigation and encourages risk averse plaintiffs to sue in the United States"; (3) "[l]iberal pleading rules used by most courts in the United States allow plaintiffs to enter court with vague claims"; (4) "[e]xtensive pre-trial discovery benefits plaintiffs by allowing them to initiate proceedings with little evidence and to acquire evidence that might otherwise be unavailable" and "discovery greatly increases defendants' litigation costs and improves plaintiffs' bargaining positions in settlement negotiations"; (5) "class actions and other procedures allowed in U.S. courts decrease the economic costs of large-scale litigation and subsequently allow large groups of individual plaintiffs, each with little monetary interest in the dispute, to bring suit against a defendant." *Id.* at 148-149.

[9] The United States Supreme Court explained that the following factors make the United States "extremely attractive to foreign plaintiffs":

(continued…)

States would increase and further congest already crowded courts." *Id.* I believe

---

(…continued)

> First, all but 6 of the 50 American States-- Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming-- offer strict liability. 1 CCH Prod. Liability Rep. § 4016 (1981). Rules roughly equivalent to American strict liability are effective in France, Belgium, and Luxembourg. West Germany and Japan have a strict liability statute for pharmaceuticals. However, strict liability remains primarily an American innovation. Second, the tort plaintiff may choose, at least potentially, from among 50 jurisdictions if he decides to file suit in the United States. Each of these jurisdictions applies its own set of malleable choice-of-law rules. Third, jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions. G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969). Even in the United Kingdom, most civil actions are not tried before a jury. 1 G. Keeton, The United Kingdom: The Development of its Laws and Constitutions 309 (1955). Fourth, unlike most foreign jurisdictions, American courts allow contingent attorney's fees, and do not tax losing parties with their opponents' attorney's fees. R. Schlesinger, Comparative Law: Cases, Text, Materials 275-277 (3d ed, 1970); Orban, Product Liability: A Comparative Legal Restatement -- Foreign National Law and the EEC Directive, 8 Ga. J. Int'l & Comp. L. 342, 393 (1978). Fifth, discovery is more extensive in American than in foreign courts. R. Schlesinger, *supra*, at 307, 310, and n. 33. [*Piper, supra* at 252 n 18.]

One commentator has stated:

> Commentators generally agree that the following factors encourage plaintiffs to sue in the United States: the availability of contingency fees, absence of fee shifting, jury trials and the tendency of American juries to award high damages, extensive pre-trial discovery, choice of different state forums with differing choice of law rules, and favorable American substantive law, including strict liability and possibility of punitive damages, possibility of class action suits, low court filing fees, and the sophistication of American lawyers and courts. [Comment, *The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs*, 19 U Pa J Int'l Econ L 141, n 37 (1998).]

that if a plaintiff's primary reason for filing a suit in Michigan is to take advantage of Michigan's favorable laws and procedures and to avoid a foreign court's less favorable laws and procedures, this should be a relevant factor to be considered by courts in deciding whether to expend the state's limited resources on a lawsuit. As the United States Supreme Court has held, "dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to . . . take advantage of favorable law." *Piper, supra* at 249 n 15. As the majority opinion states:

> In the instant case, plaintiffs are residents and citizens of Croatia who were injured in an accident in Croatia and plaintiffs have chosen to file their lawsuit in Michigan. Given that plaintiffs live in Croatia and that the underlying accident occurred in Croatia, there is no basis to presume that plaintiffs chose to file this lawsuit in Michigan out of convenience. Further, while there is no direct evidence that the primary reason why plaintiffs chose to file this lawsuit in Michigan was to take advantage of Michigan's favorable laws and to avoid Croatia's less favorable laws, no other reasonable explanation has been presented. [*Ante* at 15.]

A second additional "public interest" factor concerns the extent to which resolving a particular legal dispute in a Michigan court would compromise principles of judicial comity and undermine respect for the judicial sovereignty of a foreign jurisdiction. "[P]rinciples of judicial comity support the dismissal of controversies whose adjudication is a matter of vital interest to the alternative, foreign forum." Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, 195 (1985). "[T]olerance of international forum shopping creates . . . conflicts with basic notions of comity and respect for foreign

8

sovereignty." Comment, *The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs*, 19 U Pa J Int'l Econ L 141, 142 (1998). As one commentator has explained:

> In cases involving foreign litigants and alternative foreign forums, a shift in the focus of forum non conveniens analysis is needed, away from the convenience of the litigants and toward the appropriateness of the forum, viewed from the perspective of judicial comity. The degree of local interest of each forum is a basis for comparison, and the determination of the applicable law, to the extent that it reflects each forum's interests, should be a vital consideration as well.
>
> * * *
>
> Courts should recognize that the application of an American Forum's law to controversies in which other countries have a vital interest is likely to offend the sovereignty or frustrate the public policies of those countries. [Note, *Foreign plaintiffs and forum non conveniens: Going beyond* Reyno, 64 Tex L R 193, 222-223 (1985).]

It is important to consider the foreign jurisdiction's interest in the case and the effect that a Michigan court's resolution of the case would have upon that jurisdiction.

In this case, a Michigan court is being asked to apply Croatian law to Croatian plaintiffs in a lawsuit arising from an accident that occurred in Croatia. Certainly, a Croatian court would be better equipped at handling a matter of this sort than a Michigan court.

A third additional "public interest" factor concerns the interests of the state of Michigan in establishing and enforcing standards that domestic businesses and manufacturers must satisfy in selling their products abroad as compared to the foreign jurisdiction's interest in establishing and enforcing standards that foreign

9

businesses and manufacturers must satisfy in selling their products within its

borders. As one commentator has explained:

> Imposing our legal solutions on other nations, however beneficial when viewed from the perspective of individual litigants, impedes the opportunity for other legal systems to craft local solutions to their citizens' legal problems. If a foreign forum proves adequate and has the greater interest in the controversy, an American court can best serve the interest of justice by permitting justice to be done elsewhere. [*Id.* at 223.]

As another commentator has explained:

> Allowing forum shoppers to sue in U.S. courts not only hinders foreign relations, but also hurts foreign nations by undermining their development of legal remedies to handle legal controversies in their own courts. Other countries can better assess their own localized needs and set appropriate standards for local conditions. For example, U.S. courts are "ill-equipped to set a standard of product safety for drugs sold in other countries." [Comment, *The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs*, 19 U Pa J Int'l Econ L 141, 155-156 (1998), quoting *Harrison v Wyeth Laboratories Div of American Home Products Corp,* 510 F Supp 1, 4 (ED Pa, 1980) (holding "[t]he United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country").]

And, as yet other commentators have explained:

> Foreign plaintiffs will almost certainly continue to file products liability actions in American courts, instead of their local fora, in order to take advantage of the more favorable substantive law and procedural rules available in the United States. In response, American courts will likely continue to dismiss most such actions based on the flexible doctrine of forum non conveniens. . . . Private interest factors will often militate in favor of dismissal of suits brought by foreign plaintiffs because the bulk of the witnesses and physical evidence is likely to be located abroad. In addition, public interest factors will tend to warrant dismissal given that foreign fora plainly have a substantial interest in establishing and enforcing the

standards that manufacturers must satisfy in selling products there, whereas American courts will often have only a marginal interest in such matters. Accordingly, in dismissing these actions, American courts will promote the fundamental goals of best serving the convenience of the parties and the ends of justice. [Dunham & Gladbach, *Forum non conveniens and foreign plaintiffs in the 1990s*, 24 Brook J Int'l L 665, 703-704 (1999).]

"An important factor that courts have looked to in deciding whether to dismiss an action is the relative importance of the foreign jurisdiction's public interest in controlling the marketing and sale of products within its borders." *Id.* at 686.

In *Doe v Hyland Therapeutics Div,* 807 F Supp 1117, 1130 (SD NY, 1992), the United States District Court for the Southern District of New York concluded that where Irish plaintiffs brought suit in New York against United States manufacturers, claiming that they contracted the human immunodeficiency virus (HIV) from contaminated blood clotting products supplied by the defendants, "our 'generalized interest' in regulating the flow of dangerously defective American pharmaceutical products into the stream of world commerce cannot transcend Ireland's 'intensely local interest' in adjudicating a controversy that profoundly affects its citizens." As that court explained:

The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented, and the level of damages assessed, will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. The forum's assessment will affect not merely the quality of the product, but also the price, quantity, and

11

availability to its public. Such an assessment must remain the prerogative of the forum in which the product is used; each community faces distinct demands, and has unique concerns that make it peculiarly suited to make this judgment. We are ill-equipped to enunciate the optimal standards of safety or care for products sold in distant markets, and thus choose to refrain from imposing our determination of what constitutes appropriate behavior to circumstances with which we are not familiar. While imposing our presumably more stringent standards to deter tortious conduct within our borders could afford a higher degree of protection to the world community, such an approach would also ignore the unique significance of the foreign forum's interest in implementing its own risk-benefit analysis, informed by its knowledge of its community's competing needs, values, and concerns. [*Id.* at 1129-1130.][10]

Courts should consider which jurisdiction has the greatest interest in establishing the legal standards that will be applied in the case.

In this case, Croatia has a stronger interest in determining whether the Croatian plaintiffs are entitled to relief as a result of an accident that occurred in Croatia than does Michigan. Croatia has a considerable interest in protecting its citizens from unsafe products. Michigan concomitantly has an interest in protecting its businesses and manufacturers from unwarranted liability.[11]

---

[10] The Sixth Circuit Court of Appeals has likewise held that "the country where the injury occurred has a greater interest in the ensuing products liability litigation than the country where the product was manufactured." *Kryvicky v Scandinavian Airlines Sys,* 807 F2d 514, 517 (CA 6, 1986).

[11] As one observer has explained:

> The . . . problem of regulating the conduct of U.S. MNCs in foreign countries is that the United States would, in effect, be exporting its laws, policies, and social mores and imposing them on sovereign foreign nations. While the Court in Piper recognized that the United States has an interest in regulating its companies' conduct

(continued…)

12

However, given that the manufacturer in this case does not want Michigan's protection,[12] Michigan's interest in providing such protection seems significantly lessened. If defendant in these circumstances is amenable to subjecting itself to a Croatian court, it is not immediately apparent why a Michigan court should interfere with this result.

Fourth, on a related note, courts should also consider the sovereign interests of the state of Michigan in shaping the law within a particular substantive realm as compared to the foreign jurisdiction's interests in this same regard. In this case, Michigan does have an interest in shaping the law with regard to automobile design defect cases given the importance of the automotive industry to the state of Michigan. However, Croatia has an interest in shaping the law with regard to automobile design defect cases as well, given the significant risks posed to its citizens from the use of defectively designed automobiles within its borders. Just

_____

(…continued)
abroad, the Court declined to give significant weight to this interest. [Comment, *International forum non conveniens: "Section 1404.5"— A proposal in the interest of sovereignty, comity, and individual justice,* 45 Am U L R 415, 456 (1995).]

[12] It seems worthy of comment that here, as in *Davidson v DaimlerChrysler Motors Co*, a case being held in abeyance for this case, unpublished order of the Supreme Court, entered June 10, 2005 (Docket No. 126556), a company that was born in this state, that has grown to worldwide influence from within this state, that has been a part of the community of this state for more than three-quarters of a century, that has participated actively in the civic affairs of this state, that has given employment to hundreds of thousands of workers within this state, and that in countless ways has enriched the economy and social environment of this state, should prefer to have its disputes decided in Croatian (or Canadian) courts rather than in Michigan courts.

as the United States should not, for example, impose its own standards regarding the safety of drugs onto foreign countries, the United States should not impose its standards regarding the safety of automobiles onto foreign countries. *Harrison, supra; Doe, supra.* Michigan's "'generalized interest' in regulating the flow of dangerously defective [Michigan automotive] products into the stream of world commerce cannot transcend [Croatia's] 'intensely local interest' in adjudicating a controversy that profoundly affects its citizens." *Doe, supra* at 1130.

Fifth, courts should consider the interests of the state of Michigan in either encouraging or discouraging future lawsuits in which the forum non conveniens doctrine may potentially be invoked.[13] That is, courts should consider the extent to which accommodating the instant lawsuit in Michigan will have consequences for the numbers and types of future lawsuits heard by Michigan courts.

In this case, Croatian plaintiffs are asking a Michigan court to determine whether, under Croatian law, they are entitled to any relief as a result of an accident that occurred in Croatia. If the trial court in this case abused its discretion

---

[13] One commentator has noted:

> Courts not only consider the actual effect on the docket of shouldering the foreign plaintiff's claim, they also tend to be swayed by "floodgates" arguments. Proponents of the doctrine assert that not exercising forum non conveniens would constitute an open invitation to make U.S. courthouses a "dumping ground" for international claims. [Comment, *International forum non conveniens: "Section 1404.5"— A proposal in the interest of sovereignty, comity, and individual justice,* 45 Am U L R 415, 448 (1995).]

14

by refusing to exercise its jurisdiction, one must consider whether every case involving an automobile designed or assembled in Michigan must be tried in Michigan if so desired by the plaintiff. If a Michigan court cannot refuse to exercise jurisdiction in cases brought by foreign plaintiffs for injuries arising out of automobile accidents occurring outside the United States, Michigan will likely become the world's automobile design defect courthouse. Because the Michigan judiciary is not equipped to handle all the world's automobile design defect lawsuits along with all its other responsibilities, the trial court's decision to dismiss this action on the basis of the forum non conveniens doctrine should be affirmed.

Sixth, courts should consider the interests of the state of Michigan in expending limited judicial and other resources in trying a case. As commentators have explained:

> Courts that have granted forum non conveniens dismissals of actions brought by foreign plaintiffs have often cited to the burden that would be imposed on the American judicial system if it heard such actions. One primary justification for dismissing these actions is the view that it would be fundamentally unfair to permit foreign plaintiffs to use already backlogged American courts that are "paid for by U.S. taxpayers and whose juries are composed of U.S. citizens who are asked to drop their everyday activities to" help adjudicate an action. [Dunham & Gladbach, *Forum non conveniens and foreign plaintiffs in the 1990s*, 24 Brook J Int'l L 665, 689 (1999) (internal citation omitted).]

The United States Supreme Court has explained, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp v Gilbert,* 330 US 501, 508-509; 67 S Ct 839; 91 L

Ed 1055 (1947). That is, the people of Michigan have a civic obligation to serve as jurors, but it is an obligation that is predicated upon the idea that the people are serving the obligations of their own community. Jurors are being asked to inconvenience themselves, and divert time and attention from their families, their businesses, and their personal affairs in order to serve the larger community of which they are a part. This rationale for the juror obligation becomes sharply attenuated where this state increasingly takes cognizance of lawsuits that cannot fairly be said to have arisen from within the community. It is not to be parochial to suggest that the people of Michigan have a primary interest in "Michigan cases," cases that implicate the interests of Michigan and its people, cases in which there is a significant element of "Michigan-ness." This indeed is the primary reason why the people of Michigan "earnestly desiring to secure these blessings undiminished to ourselves and our posterity," Const of 1963, Preamble, have ordained our Constitution and established a court system to exercise the judicial power of their state. It is also to accord respect to the taxpayers of this state to recognize that their taxes should be employed only in support of a judicial system that primarily hears disputes arising from within this state.

In the instant case, plaintiffs are asking the Wayne Circuit Court to expend considerable time and resources to ascertain whether, under Croatian law, defendant is liable for the injuries that these Croatian plaintiffs suffered in an accident that occurred in Croatia. As in *Piper, supra* at 261, "[t]he American interest in this accident is simply not sufficient to justify the enormous

16

commitment of judicial time and resources that would inevitably be required if the case were to be tried here."

In summary, I believe that the following "public interest" factors (including the new factors, Nos. 4 through 9) should be considered when determining whether a case should be dismissed on the basis of the forum non conveniens doctrine:

1. Administrative difficulties that may arise in an area that may not be present in the area of origin;

2. Consideration of the state law that must govern the case;

3. People who are concerned by the proceeding;

4. The extent to which it is appropriate for the state to enable a foreign plaintiff to avail himself or herself of the more favorable substantive law and procedural rules afforded by state courts in comparison with those of the plaintiff's own jurisdiction;

5. The extent to which resolving a particular legal dispute in a state court may compromise principles of judicial comity and undermine respect for the judicial sovereignty of a foreign jurisdiction;

6. The interests of the state in establishing and enforcing standards that domestic businesses and manufacturers must satisfy in selling their products abroad as compared to the foreign jurisdiction's interest in establishing and enforcing standards that foreign businesses and manufacturers must satisfy in selling their products within its borders;

7. The interests of the state in shaping the law within a particular substantive realm as compared to the foreign jurisdiction's interest in shaping the law within a particular substantive realm;

8. The extent to which accommodating the instant lawsuit in this state will have consequences for the numbers and types of future lawsuits heard by state courts;

17

9. The interests of the state in expending its limited judicial and other resources in trying a case.

This case is similar to *Jemaa v MacGregor Athletic Products*, 151 Mich App 273; 390 NW2d 180 (1986), in which the plaintiff was injured in Ohio while playing football. The plaintiff sued the defendant in Michigan, claiming that his injury was due to a defect in the football helmet worn by the plaintiff. Although the defendant did business in Michigan, its design and manufacture of football helmets was done elsewhere. The trial court dismissed the case on the basis of the forum non conveniens doctrine. The Court of Appeals affirmed, explaining, "[N]either the plaintiff nor, apparently, the witnesses to the football accident reside in Michigan and the accident occurred in Ohio" and "[a]lthough MacGregor does business in Michigan, . . . its Michigan business is not connected to the manufacturing of the football helmets." *Id.* at 280. Likewise, in the instant case, plaintiffs do not reside in Michigan and the accident occurred in Croatia, and although defendant does business in Michigan, its Michigan business is not connected to the manufacturing of the transmission.

In *Anderson v Great Lakes Dredge & Dock Co*, 411 Mich 619, 631; 309 NW2d 539 (1981), a Florida plaintiff brought an action in Michigan pertaining to an incident that occurred in Florida. We held that "[t]he fact that virtually all the witnesses to the incident are apparently residents of Florida or nearby southern states reveals a likelihood that the defendant will suffer considerable difficulty in preparing any defense and is sufficient to overcome plaintiff's slight interest in

18

having a trial in Michigan." The vehicular accident at issue in this case occurred in Croatia, and, thus, the witnesses more than likely are residents of Croatia. It certainly would not be any easier to travel to Croatia to obtain witnesses than it would be to travel to Florida to obtain witnesses.

Plaintiffs argue that there were no witnesses to the accident in Croatia. However, as the trial court held, defendant should have an opportunity to confirm plaintiffs' assertions. Defendant should not have to blindly rely on plaintiffs' account of the accident. As the trial court explained, "Plaintiffs want Defendant to accept Plaintiffs' good faith on many matters, such as the lack of witnesses to the accident other than the vehicle's occupants and the willingness of Plaintiffs to supply relevant documents, but Defendant will no doubt want to assess these matters itself and obtain the necessary documents first-hand, matters more easily done in Croatia."

Plaintiffs argue that defendant has not established that a Michigan forum will be inconvenient because it has not established that there are any witnesses in Croatia that it will be deprived of if this case is tried in Michigan. In other words, plaintiffs argue that "any inconvenience to the defendant is speculative." *Anderson, supra* at 630. However, as we held in *Anderson, supra* at 630-631, "[w]here, as here, there is little nexus between the litigation and the forum, there is no need for the defendant to prepare extensively for trial in order to show exactly how inconvenient a trial in Michigan would prove to be."

For the reasons expressed both in the majority opinion and in this opinion, I concur in the majority's conclusion that the trial court did not abuse its discretion in dismissing this case on the basis of the doctrine of forum non conveniens. I also submit that the "public interest" factors in the forum non conveniens test of this state should be expanded upon as suggested in this opinion.

Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

JOSIP RADELJAK, Individually, as
Personal Representative of the Estate of
ENA BEGOVIC, Deceased, and as Next
Friend of LANA RADELJAK; LEO
RADELJAK; and TEREZA BEGOVIC,

       Plaintiffs-Appellees,

v                                    No. 127679

DAIMLERCHRYSLER,

       Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

     I agree with the majority that the trial court did not abuse its discretion in

dismissing this case on the basis of forum non conveniens. In this particular case,

a review of the factors set forth by this Court in *Cray v Gen Motors Corp*, 389

Mich 382; 207 NW2d 393 (1973), reveals that the trial court's decision to dismiss

was within the principled range of outcomes. I further agree with the majority that

a so-called seriously inconvenient "standard" is inappropriate, but only to the

extent that this "standard" is distinct from or inconsistent with *Cray*. Rather, the

seriously inconvenient "standard" is simply a shorthand reference for the

principles announced and factors set forth in *Cray*. In other words, *Cray* is the test

for courts to apply, and the *Cray* test clearly encompasses the principles that a

plaintiff's choice of forum is accorded deference and that a state will not exercise

jurisdiction only if the forum is seriously inconvenient. Further, because this case can be decided solely by reference to *Cray*, I disagree with the majority's decision to adopt the reasoning set forth in *Piper Aircraft Co v Reyno*, 454 US 235; 102 S Ct 252; 70 L Ed 2d 419 (1981).

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOSIP RADELJAK, personal representative,
estate of ENA BEGOVIC, deceased; JOSIP
RADELJAK, individually and as next friend
of LANA RADELJAK, LEO RADELJAK,
and TEREZA BEGOVIC,

       Plaintiffs-Appellees,

v                                  No.  127679

DAIMLERCHRYSLER CORPORATION,

       Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I agree with the Court of Appeals that the trial court abused its discretion in dismissing this case on the basis of forum non conveniens.[1] Therefore, I respectfully dissent from the majority's decision to reinstate the circuit court's dismissal. I would affirm the Court of Appeals judgment and remand the case for trial.

RELEVANT FACTUAL BACKGROUND

In the interest of clarity, it is necessary to give a brief statement of the facts of this case. Forum non conveniens involves fact-driven analyses. Plaintiffs and

_____

[1] A Latin term meaning "'an unsuitable court.'" Black's Law Dictionary (7th ed).

decedent, Ena Begovic, were Croatian citizens. They were using a 1993 Jeep Grand Cherokee (hereinafter the Jeep) on the Island of Brac on the Dalmatian coast of the Republic of Croatia. Allegedly, when the Jeep was stationary and its transmission in park, the transmission slipped into reverse gear although no one touched the controls. This caused the Jeep to roll over the lip of a promontory and into a ravine. Ena Begovic died, and the other plaintiffs suffered serious injury.

It is undisputed that all decisions regarding the designing of the Jeep were made in Michigan. This includes the decision that a transmission manufactured in Japan would be built into the Jeep. The vehicle was manufactured in Wayne County, Michigan, before being shipped to Italy where it was purchased. Maintenance on the Jeep occurred in both Italy and Croatia.

Because the Jeep had been designed and manufactured in Michigan, plaintiffs chose to file this product liability lawsuit here. Although Michigan is its home state, defendant took the position that it is not a convenient forum and moved for summary disposition. The circuit court agreed and dismissed the case on the basis of forum non conveniens. The Court of Appeals reversed, finding that the trial court had improperly avoided acknowledging its jurisdiction. It decided that Wayne County was not a seriously inconvenient forum. *Radeljak v DaimlerChrysler Corp*, unpublished opinion per curiam of the Court of Appeals, issued December 14, 2004 (Docket No. 247781). We granted leave to appeal and directed the parties to address two questions:

2

(1) whether the public interest factors of the forum non conveniens doctrine set forth in *Cray v Gen Motors Corp,* 389 Mich 382, 396 (1973), should be revised or modified; and (2) whether, even if another more appropriate forum exists, a Michigan court may not resist jurisdiction unless its own forum is "seriously inconvenient." [472 Mich 924 (2005).]

## THE BACKGROUND OF FORUM NON CONVENIENS

When a judge applies the doctrine of forum non conveniens, he or she seeks to determine whether the court where the plaintiff filed suit is inconvenient for the litigants and witnesses. Also, the judge determines whether there is another more convenient forum where the action should have been brought.[2]

The central goal of forum non conveniens is to provide a fair trial for all parties involved. In the case in which the United States Supreme Court first adopted the doctrine, *Gulf Oil Corp v Gilbert,* the Court stated:

> The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. [*Gulf Oil Corp v Gilbert*, 330 US 501, 508; 67 S Ct 839; 91 L Ed 1055 (1947).]

---

[2] Forum non conveniens is

the doctrine that an appropriate forum—even though competent under the law—may divest itself of jurisdiction if, for the convenience of the litigants and the witnesses, it appear that the action should proceed in another forum in which the action might originally have been brought. [Black's Law Dictionary (7th ed).]

The Supreme Court elaborated on this point in its discussion of the difference between the doctrine of forum non conveniens and the statute that governs change of venue, 28 USC 1404. *Norwood v Kirkpatrick*, 349 US 29; 75 S Ct 544; 99 L Ed 789 (1955). The Court noted the limitations of forum non conveniens:

> "The *forum non conveniens* doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." [*Id.* at 31, quoting *All States Freight, Inc v Modarelli*, 196 F2d 1010, 1011 (CA 3, 1952).]

Earlier, the Court had stated the central goal of the doctrine: "[T]he ultimate inquiry is whether trial will best serve the convenience of the parties and the ends of justice." *Koster v (American) Lumbermens Mut Cas Co*, 330 US 518, 527; 67 S Ct 828; 91 L Ed 1067 (1947).

It is on this ground that the Michigan Supreme Court built its forum non conveniens precedent. In *Cray*, the Court decided that the doctrine should apply in Michigan. *Cray*, 389 Mich 395. The Court enumerated several factors and subfactors that a trial court should weigh and balance in its decision on a motion based on forum non conveniens.

> A balancing out and weighing of factors to be considered in rejecting or accepting jurisdiction in such cases should include:
>
> 1. The private interest of the litigant.

4

a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;

b. Ease of access to sources of proof;

c. Distance from the situs of the accident or incident which gave rise to the litigation;

d. Enforcibility [sic] of any judgment obtained;

e. Possible harrassment [sic] of either party;

f. Other practical problems which contribute to the ease, expense and expedition of the trial;

g. Possibility of viewing the premises.

2. Matters of public interest.

a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

b. Consideration of the state law which must govern the case;

c. People who are concerned by the proceeding.

3. Reasonable promptness in raising the plea of *forum non conveniens*. [*Id*. at 395-396.]

In Michigan, these factors are often referred to as the *Cray* factors. *Cray* made clear that their application was intended to function as a balancing test with the object of comparing the advantages of two possible courts. "The courts are charged to consider the plaintiff's choice of forum and to weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state." *Id*. at 396.

5

This Court also made clear in *Cray* that the balancing test is intended to be an instrument used to avoid the injustice of forcing a party to litigate in a forum that is fundamentally unfair. It stated:

> [F]*orum non conveniens* "was designed as an instrument of justice to avoid the unfairness, vexatiousness and oppressiveness of a trial away from the domicile of a defendant." . . . The basic standards are said to be "convenience, efficiency and justice." Moore and Fink in *Moore's Federal Practice* indicate *forum non conveniens* is applied when trial would be "unduly burdensome upon the defendant". [*Id.* at 391-392, quoting Barron and Holtzoff, Federal Practice and Procedure, p 443.]

The *Cray* Court also quoted the Supreme Court of New Jersey:

> "It is only in those exceptional cases where a weighing of all the many relevant factors, of which residence is but a part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice, that the doctrine is ever invoked." [*Id.* at 392, quoting *Gore v United States Steel Corp,* 15 NJ 301, 311; 104 A2d 670 (1954). ]

Finally, *Cray* quoted the Restatement Conflict of Laws, 2d, with approval:

> "A state will not exercise jurisdiction if it is a *seriously inconvenient forum* for the trial of the action provided that a more appropriate forum is available to the plaintiff." [*Id.* at 394 n 2, quoting 1 Restatement Conflict of Laws, 2d, § 84, p 251 (emphasis added).]

In referencing this, the *Cray* Court took special note of the comment on the quoted section of the Restatement:

> In the commentary, the most important rules are said to be honoring plaintiff's choice *except in unusual circumstances* and never dismissing an action if there is no alternative forum. Appropriate forums are the site of the incident, *a corporation's state of incorporation or principal place of business* and the state of plaintiff's domicile. [*Id.* (emphasis added).]

6

It is in light of this background and history of the forum non conveniens doctrine that we must assess the judgment of the circuit court in this case. The Court of Appeals panel concluded that the trial court abused its discretion by resisting jurisdiction without determining that Wayne County was a seriously inconvenient forum. The panel reached this conclusion on the basis of the Court of Appeals past decisions in *Robey v Ford Motor Co*[3] and *Manfredi v Johnson Controls, Inc.*[4] *Robey* stated:

> When a party requests that a court decline jurisdiction based on the doctrine of forum non conveniens, there are two inquiries for the court to make: whether the forum is inconvenient and whether there is a more appropriate forum available. If there is not a more appropriate forum elsewhere, the inquiry ends and the court may not resist imposition of jurisdiction. If there is a more appropriate forum, the court still may not decline jurisdiction unless its own forum is seriously inconvenient. [*Robey*, 155 Mich App 645.]

The majority contends that the "seriously inconvenient" standard is inconsistent with *Cray*. Therefore, it overturns *Robey* and eliminates the seriously inconvenient standard. As one can see from the earlier discussion of the foundation of the forum non conveniens doctrine, *Robey* was far from inconsistent with *Cray*. In fact, the seriously inconvenient standard is well grounded in the precedents of this Court and the United States Supreme Court in the area. Rather, it is the decision of this majority that is inconsistent with *Cray*.

---

[3] 155 Mich App 643; 400 NW2d 610 (1986).

[4] 194 Mich App 519; 487 NW2d 475 (1992).

The basic concept undergirding the forum non conveniens doctrine is that a case should be dismissed if the plaintiff brought it in a completely inappropriate forum. *Norwood*, 349 US 31. But the doctrine has limited application, and the plaintiff's choice of forum is accorded significant deference. "[U]nless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp*, 330 US 508 (emphasis added). The balance swings strongly in favor of the defendant when the plaintiff chooses a forum to "'vex,'" "'harass,'" or "'oppress'" the defendant. *Id.* (citation omitted).

The seriously inconvenient standard falls directly in line with this precedent. It assures that a court does not force a plaintiff to run the risk of losing, or the expense of refiling, his or her claim because of a mere trifle. To warrant a dismissal based on forum non conveniens, the defendant must be faced with strong or significant inconvenience such as vexation, harassment, or oppression. *Id.* Only when a forum is "'completely inappropriate and inconvenient [so] that it is better to stop'" is *forum non conveniens* appropriate. *Norwood*, 349 US 31 (citation omitted). The seriously inconvenient requirement recognized in *Robey* assures that this standard is met.

It stretches the imagination to hold that the seriously inconvenient standard is inconsistent with *Cray*. As has been noted already, *Cray* cited the Restatement Second with approval. The section it cited applies the very same standard:

> A state will not exercise jurisdiction if it is a *seriously inconvenient forum* for the trial of the action provided that a more

8

appropriate forum is available to the plaintiff. [1 Restatement Conflict of Laws, 2d, § 84, p 251 (emphasis added).]

Nothing else in *Cray* contradicts this standard and the Court did not distinguish it elsewhere in the opinion or in subsequent cases. Instead, the Court articulated a consistent standard of forum non conveniens review.[5] Given that this Court noted with approval the seriously inconvenient standard when first recognizing forum non conveniens in this state, the standard is well founded in our law. It appears rash for the majority to overturn this properly recognized minimum standard for determining that a forum is sufficiently inconvenient.

In this case, the trial court did not make a finding that Wayne County was a seriously inconvenient forum. Hence, it failed to recognize the "'careful limitations'" that have applied to the forum non conveniens doctrine. *Norwood*, 349 US 31 (citation omitted). Because the court did not make this finding, it did

---

[5] See *Anderson v Great Lakes Dredge & Dock Co,* 411 Mich 619, 628; 309 NW2d 539 (1981):

> A plaintiff's selection of a forum is ordinarily accorded deference. The United States Supreme Court, describing this deference in [*Gulf Oil v*] *Gilbert*, stated, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed". [*Gulf Oil Corp*] 330 US 508. Various factors, such as those outlined in *Cray, supra*, 396-397, are to be considered in determining whether the balance *strongly* favors the defendant. [Emphasis added.]

Although *Anderson* did not use the wording "seriously inconvenient," it used a standard that is consistent, "strongly in favor of defendant." *Id*. Both *Anderson* and *Cray* fall in line with the seriously inconvenient standard. The majority tries in vain to meaningfully distinguish the standard in these cases from that cited in *Cray*.

not conclude that the balance weighed so strongly in favor of defendant that plaintiffs' choice of forum warrants disturbance. *Gulf Oil Corp*, 330 US 508. As the Court of Appeals noted, the failure of the trial court to meet this minimal standard was an abuse of discretion.

### THE FAILURE TO FULLY BALANCE THE *CRAY* FACTORS

While the trial court reviewed the *Cray* factors in its written opinion, it did not properly weigh the two forums one against the other. The trial court focused on the difficulties presented in retaining jurisdiction in Michigan. But it did not give equal consideration to the difficulties that a Croatian court would face if it had jurisdiction over the case.

For instance, the trial court considered the burden on defendant to obtain evidence remaining in Croatia. But it ignored that plaintiffs would face a similar, if not greater, burden in obtaining documents that remained in Michigan relating to the manufacture of the Jeep. The failure to take this into consideration in a product liability case is not excusable.

The trial court also considered, as a major factor disfavoring Wayne County as the proper forum, that the transmission defendant chose to place in the Jeep was designed and manufactured in Japan. However, this fact is irrelevant because a

Croatian court is in no better position to obtain documents or witnesses from Japan than is a Michigan court.[6]

Also, the trial court assumed that Croatian law would apply, an impermissible assumption. To properly apply the *Cray* factors, a court should first determine which forum's law should apply. See *Manfredi*, 194 Mich App 525-526. This failure is yet another sign that the trial court neglected to conduct an actual balancing test in deciding defendant's forum non conveniens motion.

*Cray* requires such a balancing test. "The courts are charged to consider the plaintiff's choice of forum and to weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state." *Cray*, 389 Mich 396. The failure to conduct such a balancing test is an abuse of the trial court's discretion.

THE *CRAY* FACTORS DO NOT STRONGLY OR SIGNIFICANTLY FAVOR CROATIA AS THE PROPER FORUM

The majority opines that the *Cray* factors support Croatia as the more appropriate forum. I agree with the Court of Appeals assessment that, once the factors are properly weighed, Wayne County is not a significantly inconvenient forum.

---

[6] Plaintiffs make the argument also that it was not the design of the transmission that caused the accident. They argue that it was the particular transmission that was placed in the Jeep that caused the accident. This makes the involvement of Japan even more of a red herring.

11

1. PRIVATE INTERESTS

a. Availability of compulsory process for attendance of unwilling
and the cost of obtaining attendance of willing witnesses

The trial court focused on the ease with which a Croatian court could compel the attendance of Croatian witnesses. But this is a product liability case involving the need for numerous documents. A great many of the necessary documents are located within this state, given that the Jeep was designed and manufactured here. Moreover, some witnesses are located in the United States. Hence, difficulties will arise in obtaining witnesses and documents in both locations. Also, it appears that neither forum would have the benefit of compulsory process in the other forum. Thus, this subfactor favors neither forum.

b. Ease of access to sources of proof

The trial court abused its discretion by focusing only on the problems existing if Michigan remained the forum for this litigation. No matter in which country this case is tried, one of the parties will be obliged to obtain documents from the other country. Given the nature of the case, a primary concern will be the design and manufacture of the Jeep. It seems likely that the majority of the documents needed will be in Michigan. Moreover, they will be in English. Therefore, if the case is tried in Croatia, the parties likely will be obliged to have thousands of highly technical documents translated into another language. Accordingly, this subfactor arguably tends to favor Wayne County as the proper forum.

12

The majority points out that MCR 2.305 provides that documents located in Michigan can be subpoenaed for trials outside the state. It is unknown if Croatian law has a similar provision. Therefore, this fact tends to support Croatia as the proper forum.

Given that there is support for both sides, this subfactor evenly favors both forums.

### c. Distance from the situs of the accident or incident that gave rise to the litigation

Again, this subfactor weighs evenly between the two forums. Whereas the accident occurred in Croatia, the Jeep was manufactured and designed in Michigan. Manufacture and design are incidents that give rise to the litigation, and Wayne County is much closer to these incidents.

### d. Enforceability of any judgment obtained

There is no indication that the judgment would be unenforceable in either forum. This subfactor favors neither forum.

### e. Possible harassment of either party

This factor weighs in favor of Wayne County as the proper forum. Defendant claims that some Croatian witnesses may be reluctant to testify. There is evidence to the contrary. Plaintiffs offer statements by the deceased's family doctor, the mechanic who serviced the Jeep, and the person who investigated the accident for the Croatian authorities. They stated that they will be willing to travel to and testify in Wayne County. There is no countervailing evidence that

13

witnesses located within the United States will be willing to travel to Croatia. Therefore, it is more likely that plaintiffs would have difficulty bringing reluctant witnesses related to defendant to testify in Croatia than that defendant could not bring Croatian witnesses to Michigan. Hence, this subfactor should favor Wayne County as the proper forum.[7]

### f. Other practical problems that contribute to the ease, expense, and expedition of the trial

Defendant and the majority discuss defendant's need to implead third parties in this case. But it remains unknown whether the Croatian courts allow impleading. Defendant asks this Court to conclude that they do, without providing legal and factual support for the conclusion. A party may not simply announce a position and leave it to this Court to find support for it. *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984). "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Moreover, defendant names no parties it wishes to implead. There is no way to know in which forum they could be impleaded inasmuch as they are not identified.

---

[7] The majority contends that my analysis of this subfactor is incorrect because the trial judge cannot compel foreign witnesses to attend trial in Wayne County. The Wayne County judge would have no need to resort to compulsory process with respect to the witnesses in question. Contrary to the majority's assertion, it is not mere speculation that these witnesses will attend without being subpoenaed. They have stated that they would be willing to travel to Michigan of their own free will. Given that they are the only witnesses who have clearly made this statement, this subfactor favors Wayne County as the appropriate forum.

Even if it is assumed that there are parties in Croatia that defendant needs to implead and that Croatia allows impleading, Croatia is not strongly favored as a forum. This is because, if the trial were held in Wayne County and if defendant could not implead third parties, defendant would face no greater liability. MCL 600.2957(1) provides:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

Defendant points to no provision in Croatian law similar to this one. Hence, it could be argued that Wayne County is the more appropriate forum because a proper allocation of liability is assumed there. At the very least, considering the totality of the circumstance existing under this subfactor, it does not clearly favor either Croatia or Wayne County.

### g. Possibility of viewing the premises

This subfactor favors Croatia as the forum because the accident occurred there.

In summary, most of the subfactors under "private interest" weigh evenly between the two forums. The possibility of viewing the premises favors Croatia. But the possibility of witness harassment favors Wayne County. In any event, the "private interests" factor assuredly does not favor Croatia, as the majority asserts.

15

## 2. MATTERS OF PUBLIC INTEREST

### a. Administrative difficulties that may arise in an area
### which may not be present in the area of origin

Again, defendant provided the trial court no information about the legal conditions in Croatia. The majority argues that the Wayne County docket would be congested if every automotive design case arising abroad were brought there. But we have no reason to believe that would occur. Instead, the evidence suggests that, despite the existence for the past two decades of the *Robey* "seriously inconvenient" standard, Wayne County has suffered no flood of automobile product liability cases. The majority's reasoning under this subfactor borders on fear-mongering.

Because we have no idea how busy the Croatian courts are, we cannot conclude in any event that the Wayne County docket would be more congested than a Croatian court docket. The *Cray* factors are intended as a balancing test. *Cray*, 389 Mich 396. The record in this case does not permit a proper balancing of this subfactor. Therefore, it should not be concluded that it favors either forum.

### b. Consideration of the state law that must govern the case

As previously discussed in my opinion, the trial court abused its discretion by failing to analyze this subfactor. It merely assumed inappropriately that Croatian law would apply to the case.

I agree with the Court of Appeals that Croatian law may not apply. The ancient rule in the field of choice of law was *lex loci delicti*. It required that a

16

court always apply the law of the place where the tort or wrong occurred. *Sutherland v Kennington Truck Service Ltd*, 454 Mich 274, 278; 562 NW2d 466 (1997). But Michigan long ago abandoned this rule. *Id.* at 283-284. *Sutherland* articulated the proper test for determining if Michigan law should apply:

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. [*Id.* at 286.]

It is undisputed that Croatia has an interest in this case. When another state has a significant interest and Michigan's interest is minimal, Michigan courts should defer to the foreign state's law. *Hall v Gen Motors Corp*, 229 Mich App 580, 585; 582 NW2d 866 (1998). But, in this case, I believe that Michigan has more than a minimal interest.

The Jeep was designed and manufactured in this state. Michigan has easily as much interest in the safe design and manufacture of its goods as does any other state or country. Its interest may be greater because the state's good name stands to be diminished if its products are branded dangerous or deadly.

In addition, Michigan has an interest in protecting its manufacturers, given that they provide a large percentage of the state's job base. Michigan has an interest in having known product liability laws applied to ensure fair determinations of liability. The Michigan Legislature has implemented laws to

17

protect consumers against faulty products and to protect manufacturers against Draconian liability determinations. Michigan has a legitimate interest in applying those laws.[8]

The majority points to the Court of Appeals decision in *Farrell v Ford Motor Co*,[9] to support the argument that it is more likely that Croatian law applies than Michigan law. *Farrell* can be distinguished. In *Farrell,* the plaintiff's argument was that Ford's headquarters are in Michigan. *Farrell*, 199 Mich App 93-94. There was no evidence in the record regarding where the car in that case was manufactured or designed. *Id*. at 94 n 3. And the Court of Appeals paid special attention to the major connection Ford had to North Carolina:

> Ford unquestionably generates substantial commerce within the State of North Carolina. In connection with its motion for summary disposition, Ford submitted substantial documentary evidence in the form of affidavits that reveal that Ford directly employs seventy employees at its Charlotte, North Carolina, facility and purchased nearly $ 591 million worth of materials from North Carolina suppliers in 1989. In addition, Ford and Lincoln-Mercury vehicles accounted for 27.4 percent of all new cars and 30 percent of new trucks sold in North Carolina in 1989. It is obviously in North Carolina's economic interest to encourage manufacturers, such as Ford, to do business in North Carolina. The sales taxes collected,

---

[8] Defendant wants this Court to assume that product liability law in Croatia does not favor plaintiffs. Defendant argues that plaintiffs are shopping for a better forum. Again, defendant refers to nothing in the record to support this assumption. We have no reason to assume that Michigan's laws are less favorable to a defendant than Croatia's. Given that defendant offers no support for its argument on this point, this Court will not furnish support for it. *Goolsby*, 419 Mich 655 n 1.

[9] 199 Mich App 81; 501 NW2d 567 (1993).

salaries paid, and materials purchased all contribute to North Carolina's economy. [*Id*. at 93.]

Defendant fails to document such significant economic connections with the Island of Brac, the Dalmatian Coast, or the Republic of Croatia. Given this, we have no way of knowing what economic connections defendant has with the alternate forum. The lack of a record in this regard clearly distinguishes this case from *Farrell*. Because of it, I believe that Michigan may apply its own law to this case.

Given that there is strong support for Michigan applying its own law, this subfactor favors retaining jurisdiction in Wayne County.

c. People who are concerned by the proceeding

Parties from both forums have an interest in this case. Citizens of Croatia were injured in the crash. Ena Begovic had the distinction of being a famous actress.[10] On the other hand, as discussed earlier regarding subfactor b, Michigan has more than an incidental interest in this case. Therefore, this subfactor does not clearly favor either forum.

Synthesizing the subfactors under the "matters of public interest" factor, neither forum is strongly favored. But the consideration of state law slightly

---

[10] See Wikipedia, <http://en.wikipedia.org/wiki/Ena_Begovi%C4%87> (accessed May 10, 2006), and the Internet Movie Database, <http://www.imdb.com/name/nm0066807/> (accessed May 10, 2006).

favors Michigan as the forum. At the very least, the public interest factor does not strongly favor Croatia as the proper forum, as the majority implies.

### 3. REASONABLE PROMPTNESS IN RAISING FORUM NON CONVENIENS

No assertion is made that defendant failed to promptly raise forum non conveniens.

In summary, considering all the *Cray* factors, neither forum is strongly favored. Instead, it appears that the two forums are rather equally matched. And a strong argument could be made that the factors favor Michigan as a forum.

The factors assuredly do not strongly favor Croatia. Unless the "balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp*, 330 US 508. Because the reviewed factors do not strongly weigh in favor of defendant, this is not one of those "'exceptional cases'" where it is decisively established that there is another forum where "'trial will best serve the convenience of the parties and the ends of justice . . . .'" *Cray*, 389 Mich 392, quoting *Gore,* 15 NJ 301.

There is no evidence that plaintiffs brought this case to vex, harass, or oppress defendant. Therefore, the principles undergirding the doctrine are not implicated, and Wayne County is not a completely inappropriate forum. *Norwood*, 349 US 31. In such situations, Wayne County should not avoid its jurisdiction.

The trial court abused its discretion by dismissing the case without finding that Wayne County is a seriously inconvenient forum. *Cray*, 389 Mich 394 n 2; *Robey*, 155 Mich App 645. I would affirm the decision of the Court of Appeals.

THERE IS NO NEED TO ADD TO THE *CRAY* FACTORS

We specifically asked the parties to address whether *Cray's* public interest factor should be revised or modified. Justice Markman notes several "contemporary realities" that support adding public interest subfactors such as the globalization of American companies, the expansion of free trade, and the attractiveness of American courts. Justice Markman's additional factors would strongly disfavor foreign plaintiffs.[11] I feel that such additions are not necessary.

Despite the authority discussing the attractiveness of American courts, there is little to demonstrate that Michigan has become an especially attractive forum. There is no evidence that foreign nationals are rushing to file product liability or other tort cases in Michigan. When specifically asked about the number of such cases in Michigan, defendant's attorney could point to only a handful, and he could specifically name just two. There is simply no evidence that Michigan's courts are flooded with cases brought by foreign nationals. And there is no indication that a sudden influx will occur if the law is not immediately altered.

---

[11] By use of the term "foreign plaintiffs," Justice Markman means nonresidents of the United States.

21

Without a disease, there is no need for a cure. Courts have proven well equipped to apply *Cray* as it stands. And the *Cray* factors have proven eminently capable of handling the issue of forum non conveniens. Therefore, I would not add to the public interest factors.

Similarly, I must dissent from the majority's decision to adopt the United States Supreme Court's statement in *Piper Aircraft Co v Reyno*[12] that a foreign plaintiff's choice of forum should be accorded less deference. The Supreme Court stated:

> The District Court acknowledged that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. It held, however, that the presumption applies with less force when the plaintiff or real parties in interest are foreign.
>
> The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster*, the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. 330 U.S., at 524. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference. [*Piper*, 454 US 255-256.]

*Piper* went on to provide:

> Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the

---

[12] 454 US 235; 102 S Ct 252; 70 L Ed 2d 419 (1981).

balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper. [*Id*. at 255 n 23.]

I do not believe that we should adopt *Piper*. The reason that the *Piper* Court is giving less deference to a foreign national's choice of forum is because the foreign national is foreign. Basing access to our courts on such a status is highly suspect and smacks of xenophobia. As the Washington Supreme Court noted:

The Court's logic [in *Piper*] does not withstand scrutiny. The Court is comparing apples and oranges. Foreigners, by definition, can never choose the United States as their home forum. . . . [I]t is not necessarily less reasonable to assume that a foreign plaintiff's choice of forum is convenient. Why is it less reasonable to assume that a plaintiff from British Columbia, who brings suit in Washington, has chosen a less convenient forum than a plaintiff from Florida bringing the same suit? [*Myers v Boeing Co*, 115 Wash 2d 123, 138; 794 P2d 1272 (1990) (emphasis in original).]

Treating foreign nationals differently in every case simply does not make logical sense. To offer a Michigan example, person A is a resident of Windsor, Canada, but crosses the Ambassador Bridge each workday to work in Detroit. While driving a vehicle designed, manufactured, bought, and maintained in Michigan before crossing from Canada one day, person A is involved in an accident caused by an automobile design defect. Person B is a resident of California. He drives a DaimlerChrysler vehicle that was designed in Germany and manufactured outside Michigan. He is also involved in an automobile accident caused by a design defect, but it occurs in Nevada.

Under *Piper*, the circuit court must accord considerable deference to person B's choice of Michigan as a forum, but person A's choice of Michigan would not warrant such deference. This is despite the fact that person A has significantly greater contact and connection to Michigan than person B. There is no reason for this distinction aside from the desire to discriminate against person A because of A's status as a foreign national. I find such discrimination inappropriate and unnecessary. The discrimination is needless in light of the fact that application of the *Cray* factors would properly locate the correct forum.

Much of the 1981 *Piper* decision is based on the notion that American courts are particularly attractive to foreign plaintiffs. Its rule was apparently created with the object of preventing a flood of foreign cases into American courts. But again, there is no real evidence of a threatened influx into Michigan. And there is no evidence that the existing *Cray* factors are ill-equipped to prevent an influx should it arise.

Moreover, *Piper* makes forum-shopping easier for corporations headquartered in the United States. Foreign nationals often bring cases in the home forum of the defendant corporation. But *Piper* enables a corporation based in the United States not to defend the case on its home turf in a court minutes away from home. Instead, the corporation can decide to fly halfway around the globe to defend the case in an unfamiliar court and often in a language other than English. The motivation for this is to find a forum more conducive to its victory. *Piper* facilitates forum-shopping for these corporations by lowering the standard

necessary to escape the original forum's jurisdiction. Forum-shopping in general is inappropriate. And I would not encourage it by adopting the language cited earlier from *Piper.*

But even under *Piper*, this case does not warrant dismissal based on forum non conveniens. A foreign national's choice of forum is still accorded deference. "Citizens or residents deserve *somewhat more deference* than foreign plaintiffs . . . ." *Piper*, 454 US 255 n 23 (emphasis added). Somewhat less deference is a far cry from no deference at all. In fact, considering the statements made in *Gulf Oil Corp*, a fair amount of deference for the plaintiff's choice remains under *Piper. Gulf Oil Corp*, 330 US 508. As was discussed earlier in this opinion, there is an even balance between the convenience of the forums when the *Cray* factors are applied. Hence, giving any deference at all to the plaintiffs' choice of forum would result in Wayne County retaining jurisdiction.

The majority contends that the only reasonable explanation for plaintiffs' decision to sue in Michigan was to take advantage of Michigan's favorable laws and to avoid Croatia's less favorable laws. This simply is not true. There is a legitimate argument that plaintiffs filed this case in Michigan as a matter of convenience. As noted earlier, there are likely thousands of documents in Michigan relating to the design and manufacture of the Jeep. Also there are likely numerous witnesses in the United States who could be called to testify regarding the choices made in designing and manufacturing the Jeep. This is not to mention the thousands of pages of documents that likely exist in Washington, D.C.,

involving a National Highway Safety Administration investigation of the problems with this kind of Jeep. All these documents are in English, and few, if any, of the witnesses speak Croatian. The choice of forum was appropriately influenced by these considerations.

Rather than merely shopping for a favorably disposed forum, plaintiffs came to defendant's home state to facilitate calling witnesses and obtaining documents that will form the foundation of their case. This choice seems more than reasonable. It is defendant that is hard-pressed to argue that its reason for opposing Wayne County's jurisdiction is not forum-shopping. It seeks to close the doors to a court in its backyard, so that it could fly halfway around the world to defend the case in a foreign country. Given that all identified Croatian witnesses will come to this county, the sole remaining reason for defendant's resistance to the Wayne Circuit Court must be to find a more friendly forum.

Defendant has not and cannot demonstrate that plaintiffs' choice is unnecessarily burdensome for it or for the court. Even under *Piper*, the balancing of the conveniences is decisive when deciding whether to dismiss a case. *Piper*, 454 US 255 n 23. Because the Wayne Circuit Court is not an unsuitable court, the forum non conveniens doctrine does not permit the circuit court to avoid jurisdiction.

CONCLUSION

The *Cray* factors do not strongly favor Croatia as the proper forum in this case. And Wayne County is not a seriously inconvenient forum. Therefore, the

26

trial court abused its discretion by dismissing this case on the basis of the doctrine of forum non conveniens. I would affirm the decision of the Court of Appeals.

The majority contends that I pay only lip service to the "abuse of discretion" standard. It reaches this conclusion because I would decide the case differently than it does. The majority misses the fact that I am applying the correct standard, the seriously inconvenient standard, to this forum non conveniens case. When this standard is applied, the trial court's decision is *not* within the principled range of outcomes because it pays no respect to plaintiffs' choice of forum. The decision that Wayne County can avoid its jurisdiction is an abuse of discretion because the *Cray* factors do not strongly weigh in favor of Croatia as a forum. *Gulf Oil Corp*, 330 US 508.

As noted elsewhere in this opinion, the trial court abused its discretion in other ways as well. First, it failed to balance the *Cray* factors between the two forums. *Cray*, 389 Mich 396. Next, it failed to determine which forum's law to apply. To properly use the *Cray* factors, a court must first make such a determination. See *Manfredi*, 194 Mich App 525-526. It is because of these failures that I conclude that the trial court's decision is not within the principled range of outcomes. Hence it constitutes an abuse of discretion.

Also, there is no basis for adopting the *Piper* standard according less deference to foreign plaintiffs' choice of forum. Therefore, I oppose embracing the United States Supreme Court's reasoning in that case. Because the *Cray*

factors have served us well for many years, I would continue to use them without amendment.

Marilyn Kelly